IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANTHONY SAVOY <br> 7150 12th Street, NW; #344 <br> Washington, DC 20012 <br><br> Plaintiff <br><br> v. <br><br> THE EVERYMAN THEATRE, INCORPORATED <br> Serve: Vincent M. Lancisi (Registered Agent) <br> 315 W. Fayette Street <br> Baltimore, MD 21201 <br><br> and <br><br> MARISSA LAROSE <br> c/o Everyman Theatre <br> 315 W. Fayette Street <br> Baltimore, MD 21201 <br><br> Defendants. | * <br> * <br> * <br> * <br> * Civil Action No.: <br> * <br> * **JURY TRIAL DEMAND** <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

COMES NOW Plaintiff, Anthony Savoy, through undersigned counsel, and files this Complaint against The Everyman Theatre, Incorporated and Marissa LaRose and as causes of action state**s** as follows:

**NATURE OF THE CASE**

1. This case is brought under Title VII of the Civil Rights Act of 1964, as amended, and Section 1981 of the Civil Rights Act of 1866, as amended, by Anthony Savoy (hereinafter "Mr. Savoy"). This case alleges discrimination based on race and/or sexual orientation as well as retaliation. The claims are brought against Everyman Theatre and its Managing Director, Marissa LaRose.

1

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1331, 1332, 1343 and 1367, as well as principles of supplemental and pendant jurisdiction.

3. On or about February 3, 2025 Mr. Savoy filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On March 26, 2025 the EEOC issued its Determination and Notice of Rights ("Right to Sue Notice"). This Complaint is being filed within 90 days of Mr. Savoy's receipt of the Right to Sue Notice.

4. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391. This Complaint is filed under the Civil Rights Act of 1964, as amended, 42 U.S.C.S. § 2000e-2(a)(1), and 42 U.S.C. § 1981, as amended. The causes of action alleged herein arise from unlawful employment actions that occurred within this judicial district.

5. The amount in controversy exceeds $75,000.00.

## PARTIES

6. Plaintiff, Anthony Savoy, is an individual who is and has been a resident of the District of Columbia and a former employee of The Everyman Theatre, Incorporated.

7. Defendant, The Everyman Theatre, Incorporated (hereinafter the "Theatre"), is a Maryland theater company that provides transformative experiences through professional theatre that are welcoming, relevant, and affordable to everyone, featuring a Resident Company of Artists.

8. Defendant, Marissa LaRose (hereinafter "Ms. LaRose"), at all relevant times herein, served as Managing Director of the Theatre and was Mr. Savoy's direct supervisor.

## FACTS

9. On November 28, 2022 Mr. Savoy commenced his employment as Director of Education & Community Engagement at the Theatre. In this capacity, Mr. Savoy was responsible for overseeing a staff of 60-70 (teachers, administrative staff, partnership collaborators, resident

2

company contractors, apprentices, interns, and volunteers) in development of education programs and community engagement initiatives.

10. Mr. Savoy joined a management team that was headed by Managing Director, Ms. LaRose, seven program managers, and supported by Human Resources Director Larry Bright (hereinafter "Mr. Bright").

11. Mr. Savoy worked assiduously to expand the Theatre's outreach to the Baltimore community, including city and county schools, as well as through public and charter school partnerships in neighboring Prince George's County, Anne Arundel County, and Washington, DC.

12. As a direct response to Mr. Savoy's early successes, within six (6) months after his arrival at the Theatre, he received a merit increase in salary and accolades from his manager and colleagues for the marked improvements he had made thus far at the Theatre.

13. By March 2024 Mr. Savoy's work had contributed immensely to the growth of the Theatre. Mr. Savoy developed and implemented effective management systems such as HSMAT and Education Event ROS, Education Program Buckets Resource, HSMAT Tier System, Engagement Tracking, Summer Scheduling, Education and Marketing Calendar, "Ways We Partner" Flyers, Feedback Surveys, Development Information share out folders (for collaboration and gathering); established data systems to compare year-to-year assessments; created a roadmap towards the future of Education & Engagement, and Seasonal Infographics for the use of marketing and development. These systems enhanced the Theatre's education systems to make them more responsive to the community needs, stakeholder enjoyment, and enabled more strategic and effective planning.

14. In addition, to fulfill the Theatre's goal of building connections to minority communities, Mr. Savoy did outreach and cemented relationships with black church communities; in collaboration with the Theatre's marketing and development departments, spearheaded the program

Encore! Theatre Engagement for at-risk youth; developed and grew new partnerships within Baltimore City Department of Juvenile Services and the Department of Juvenile Justice for Prince George's County.  Mr. Savoy also spearheaded and landed a three-year partnership (approx.. $64,000 per year) with Elev8, Baltimore, further bolstering revenue power; he expanded program reach into the most underserved demographics of Baltimore City by adding more summer program sites and pursued partnerships in Anne Arundel and Baltimore counties, and hired more teachers of color to serve these student demographics; as well as completely reimagined the on-site Visual Arts gallery to house the work of black artists Bryan Robinson – over one year of curated artwork specific to each performance.  The result was deeper connections to Baltimore City and County schools, businesses, community, and increased participation and admission of Black and Brown students, teachers, and artists into the Theatre's programming and patronage.

15.     Mr. Savoy achieved these successes while having to navigate push-back from leadership, particularly Ms. LaRose (white, straight), about development of culturally-relevant practices and programming to meet the needs of expanded connections to minority communities. In addition, Mr. Savoy frequently was the target of "micro-aggressions" from his immediate staff (white and straight) who often disregarded his directives and questioned his authority and competence, but his complaints to Ms. LaRose about these issues fell on "deaf ears" because she did nothing to alleviate the situation.

16.     Mr. Savoy also saw that Ms. LaRose had been treating him markedly different from his manager colleagues (white and/or straight) whom she allowed to leave work early, arrive late, miss valuable deliverable deadlines, pushback with their thoughts or ideas, and exhibit brazen emotional outbursts in group settings without criticism, but she criticized and micromanaged Mr. Savoy for similar or less innocuous displays of passion for the job.  As the only Black, gay man on the leadership team, Mr. Savoy felt the need to walk a "tightrope" and not "create waves" or

4

jeopardize his job by complaining about differential treatment, asking for additional support, or managing up concerns that limited his and his team's abilities to effectively risk-manage, assess, or improve upon program needs.

17. However, on March 14, 2024 Mr. Savoy felt things had reached critical mass so he went to the Human Resources department, spoke to HR Assistant, Robin Fracker and complained about Ms. LaRose's discriminatory treatment of him as compared to white and/or straight colleagues. Mr. Savoy provided several examples of this discriminatory treatment. Mr. Fracker responded that he did not know what the next steps would be but that he would relay Mr. Savoy's complaint to HR Director, Mr. Bright.

18. Later in the day on March 14, 2024 Mr. Savoy met with Mr. Bright and recounted his (Savoy) discrimination complaint about Ms. LaRose. At the end of the meeting, Mr. Bright advised that he would speak with Ms. LaRose about Mr. Savoy's complaint and get back to him. Mr. Savoy never heard back from Mr. Bright about the complaint, but believed he discussed the complaint with Ms. LaRose.

19. Mr. Savoy also discussed his experiences of discriminatory treatment by Ms. LaRose with at least two of the Theatre's board members.

20. Soon after complaining to Mr. Bright and board members, Mr. Savoy noticed a withdrawal from engagement with him by Ms. LaRose, her isolation of him in the workplace, and noted during one-on-one meetings that she took notes assiduously and recorded a video, a stark difference to her previous interactions with him.

21. Then, to Mr. Savoy's dismay, on April 30, 2024 he received a Performance Improvement Plan ("PIP") from Ms. LaRose alleging a myriad of concerns with his performance, some dating back more than a year to early 2023. In the PIP Ms. LaRose raised concerns about

Mr. Savoy's alleged inability to accept performance feedback and modify behavior; own shortfalls, errors, or imperfections of his department; demonstrating unclear and often abrasive communication; inability to problem solve through collaboration; inability to manage outside of a rigid structure and find the nuance in implementation and collaboration; imbalanced focus on the mission, integrity, and substance of programs over the revenue, sale and image; and lacking a connection to the Theatre's overall work and mission. The review date for the PIP was set for May 31, 2024.

22. Ms. LaRose cursorily discussed the PIP with Mr. Savoy and could not explain to him how he could successfully meet her expected improvement goals, given that they were couched in vague, nuanced, and subjective terms.

23. Nevertheless, Mr. Savoy endeavored to address the PIP, such as increasing his in-person time in the office from 35 hours (as described by Ms. LaRose) to 43 hours even though his predecessor (white and straight) had worked remotely full-time; arriving 15-30 minutes ahead of his scheduled start times and departing 15-30 minutes after the scheduled end of his work day; and he cut back on site visits to maintain his presence in-office. Mr. Savoy also felt it important to announce his arrivals and departures from the office and to seek reimbursement for his work travel as ways of validating his in-office presence and travel times to and from site locations.

24. When Mr. Savoy met with Ms. LaRose on May 31, 2024 for the PIP review, she acknowledged some areas of improvement with increase of his on-site presence and "showing greater willingness to collaborate across departments." But Ms. LaRose claimed she remained concerned with his lack of "willingness to accept performance feedback and modify behavior, own shortfalls, errors, or imperfections in the department," without specifying any applicable incidents. Ms. LaRose extended the PIP for two weeks to the next meeting on June 14, 2024, which did not occur.

25. On the morning of June 18, 2024 Mr. Savoy was summoned to a meeting with Ms. LaRose and Mr. Bright. Ms. LaRose advised Mr. Savoy that he had not met the expectations of the PIP, without explaining how he fell short or which ones, and terminated his employment, effective immediately on June 18, 2024.

26. Prior to receipt of the PIP, Mr. Savoy had never received an annual performance review, as required by the Theatre's policies and procedures, and he had not received any write-ups or disciplinary action pertaining to his work performance or any other issue.

27. Significantly, prior to receipt of the PIP and the consequent termination, Mr. Savoy had an enviable record of success at the Theatre having stewarded education revenues to the highest level in the Theatre's history (an approx. increase of 138% over the highest pre-Covid year); increased student engagement by 67%; and he had received overwhelming positive feedback from partners, students, families, teachers, Theatre staff and colleagues, and members of the Theatre's Board of Directors.

28. Defendants' conduct was outrageous, malicious, wanton, reckless, and/or in willful disregard of Mr. Savoy's rights under the law.

29. Defendant, Theatre, is responsible for the unlawful actions of its managers under the doctrine of *respondeat superior*.

### COUNT I – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (EMPLOYMENT DISCRIMINATION BASED ON RACE AND/OR SEXUAL ORIENTATION)
**(Everyman Theatre Only)**

30. Plaintiff, Anthony Savoy, incorporates by reference the facts and allegations set forth in the preceding paragraphs as if fully set forth hereunder.

31. Mr. Savoy, who is Black and gay, is a member of protected classes.

32. Mr. Savoy suffered adverse employment actions when he initially received an unjustified PIP and ultimately terminated from his employment effective June 18, 2024.

33. At the time of the PIP and the termination, Mr. Savoy had been meeting the legitimate employment expectations of the Theatre as evidenced by his expanded outreach and engagement of minority communities thereby increasing student engagement by 67%, his historical increase in education department revenues, and his receipt of overwhelming positive feedback about his work performance from a broad cross-section of stakeholders, including partners, students, teachers, colleagues, and members of the Theatre's Board of Directors.

34. Mr. Savoy was treated differently than similarly situated employees at the Theatre who are not Black and/or gay and are outside his protected classes, including the other line managers (e.g. K.P. and A. H., white and straight), who were unsuccessful in meeting their department revenue figures, feedback markers, maintaining fiscal stewardship, timelines and key performance indicators, etc.

35. Mr. Savoy's alleged violations did not rise to the level of a terminable offense under the Theatre's policies and procedures.

36. Defendant's unlawful placement of Mr. Savoy on a PIP and his ultimate termination because of his race and/or sexual orientation have caused economic and non-economic damages to him, including lost income and benefits. In addition, Mr. Savoy has also experienced heightened stress, anxiety, and loss of enjoyment of life as a result of Defendant's misconduct. Mr. Savoy has been damaged, and it is likely that he will continue to experience these damages in the foreseeable future.

37. At all times Defendant's managers, including Ms. LaRose, were acting within the scope of their employment with Defendant Theatre.

38. As a direct and proximate result of Defendant's misconduct, Mr. Savoy has

suffered, and continue**s** to suffer damages, including, but not limited to, past, present, and future economic damages, humiliation, embarrassment, inconvenience, and emotional distress.

39. As a direct and proximate cause of Defendant's unlawful conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

40. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant, Everyman Theatre, and prays that this Honorable Court:

a. Award equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits;

b. Award compensatory and punitive damages in excess of Three Hundred Thousand Dollars ($300,000.00);

c. Award the reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C § 1988 (b) and (c) and pre and post-judgement interest; and

d. Award such other and further relief as the Court deems just and proper.

### COUNT II -  RETALIATION UNDER TITLE VII
### (Theatre Only)

41. Plaintiff restates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

42. Plaintiff engaged in statutorily protected activity when he complained about racial and/or sexual orientation discriminatory practices to Ms. Fracker (HR Assistant) and Mr. Bright (HR Director) on or about March 17, 2024 and to members of the Theatre's Board of Directors toward the end of March 2024.

43. Defendant's managers and Board members knew that retaliation for an employee's protected activity is unlawful under the laws of the United States and the state of Maryland.

44. Nevertheless, as a direct result of and in response to Plaintiff's protected activities Defendants subjected him to materially adverse action(s) by placing him on an unjustified PIP and subsequently terminating his employment, within 6 weeks and three months, respectively, after he complained of discrimination.

45 But for Plaintiff's protected activities he would not have been subjected to the retaliatory actions set forth above.

46. At all times Defendant's managers, including Ms. LaRose, were acting within the scope of their employment with Defendant Theatre.

47. Defendant's placement of Mr. Savoy on an unjustified PIP and subsequently terminating his employment because of his race and/or sexual orientation have caused economic and non-economic damages to him, including lost income and benefits. In addition, Mr. Savoy has also experienced heightened stress, anxiety, and loss of enjoyment of life as a result of Defendant's misconduct. Mr. Savoy has been damaged, and it is likely that he will continue to experience these damages in the foreseeable future.

48. As a direct and proximate result of Defendant's misconduct, Mr. Savoy has suffered, and continues to suffer damages, including, but not limited to, past, present, and future economic damages, humiliation, embarrassment, inconvenience, and emotional distress.

49. As a direct and proximate cause of Defendant's unlawful conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

50. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant, Everyman Theatre, and prays that this Honorable Court:

a. Award equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits;

b. Award compensatory and punitive damages in excess of Three Hundred Thousand Dollars ($300,000.00);

c. Award the reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C § 1988 (b) and (c) and pre and post-judgement interest; and

d. Award such other and further relief as the Court deems just and proper.

**COUNT III – RACE DISCRIMINATION UNDER SECTION 1981 (Both Defendants)**

51. Plaintiff, Anthony Savoy incorporates by reference the facts and allegations set forth in the preceding paragraphs as if fully set forth hereunder.

52. Mr. Savoy, who is Black, is a member of a protected class.

53. Mr. Savoy suffered adverse employment actions when Ms. LaRose (white) issued to him an unjustified PIP and ultimately terminated him, effective June 18, 2024.

54. At the time of the PIP and the termination, Mr. Savoy had been meeting the legitimate employment expectations of the Theatre as evidenced by his expanded outreach and engagement of minority communities thereby increasing student engagement by 67%, his historical increase in education department revenues, and his receipt of overwhelming positive feedback from partners, students, and members of the Theatre's Board of Directors.

55. Defendants treated Mr. Savoy differently than similarly situated employees at the Theatre who are not Black and are outside his protected class, including other line managers (e.g. K.P. and A.H. - white), who were unsuccessful in meeting their department revenue figures, feedback markers, maintaining fiscal stewardship, timelines and key performance indicators, etc.

56. Mr. Savoy's alleged performance deficiencies set forth in the PIP did not rise to the level of a terminable offense under the Theatre's policies and procedures.

57. Defendants' unlawful placement of Mr. Savoy on a PIP and his subsequent termination because of his race have caused economic and non-economic damages to him, including lost income and benefits. In addition, Mr. Savoy has also experienced heightened stress, anxiety, and loss of enjoyment of life as a result of Defendants' misconduct. Mr. Savoy has been damaged, and it is likely that he will continue to experience these damages in the foreseeable future.

58. As a direct and proximate result of Defendants' misconduct, Mr. Savoy has suffered, and continues to suffer damages, including, but not limited to, past, present, and future economic damages, humiliation, embarrassment, inconvenience, and emotional distress.

59. As a direct and proximate cause of Defendants' unlawful conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits,

promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

60. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants Everyman Theatre and Ms. LaRose, jointly and severally, and prays that this Honorable Court:

a. Award equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits;

b. Award compensatory damages in excess of Three Hundred Thousand Dollars ($300,000.00);

c. Award punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

d. Award the reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C § 1988 (b) and (c) and pre and post-judgement interest; and

e. Award such other and further relief as the Court deems just and proper.

### COUNT IV - RETALIATION UNDER SECTION 1981
**(Both Defendants)**

61. Plaintiff restates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

62. Plaintiff engaged in statutorily protected activity when he complained about racial discriminatory practices to Ms. Fracker (HR Assistant) and Mr. Bright (HR Director) on or about March 17, 2024 and to members of the Theatre's Board of Directors toward the end of March 2024.

63. Upon information and belief, Ms. LaRose knew about Plaintiff's protected activities as communicated to her by HR staff and/or board members.

64. Defendants' managers, including Ms. LaRose, and Board members knew that retaliation for an employee's protected activity is unlawful under the laws of the United States and the state of Maryland.

65. Nevertheless, as a direct result of and in response to Plaintiff's protected activities, Defendants subjected him to materially adverse action(s) by placing him on an unjustified PIP and subsequently terminating his employment, within 6 weeks and three months, respectively, after he complained of discrimination.

66. But for Plaintiff's protected activities he would not have been subjected to the retaliatory actions set forth above.

67. At all times Defendant's managers, including Ms. LaRose, were acting within the scope of their employment with Defendant Everyman Theatre.

68. Defendants' retaliatory treatment of Plaintiff based on his protected activities constitutes a violation of his rights under Section 1981 of the Civil Rights Act of 1866, as amended.

69. Defendants' unlawful placement of Mr. Savoy on an unjustified PIP and subsequently terminating his employment in retaliation for his protected activities have caused economic and non-economic damages to him, including lost income and benefits. In addition, Mr. Savoy has also experienced heightened stress, anxiety, and loss of enjoyment of life as a result of Defendants' misconduct. Mr. Savoy has been damaged, and it is likely that he will continue to experience these damages in the foreseeable future.

70. As a direct and proximate result of Defendants' misconduct, Mr. Savoy has

suffered, and continue**s** to suffer damages, including, but not limited to, past, present, and future economic damages, humiliation, embarrassment, inconvenience, and emotional distress.

71. As a direct and proximate cause of Defendants' unlawful conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

72. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants Everyman Theatre and Ms. LaRose, jointly and severally, and prays that this Honorable Court:

a. Award equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, and lost job benefits;

b. Award compensatory damages in excess of Three Hundred Thousand Dollars ($300,000.00);

c. Award punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

d. Award the reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C § 1988 (b) and (c) and pre and post-judgement interest; and

e. Award such other and further relief as the Court deems just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all counts of this Complaint so triable.

*/s/ Jeanett P. Henry*
Jeanett P. Henry

Respectfully submitted,

*/s/ Jeanett P. Henry*
Jeanett P. Henry, Bar No. 22571
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
(301) 562-1340
(240) 638-2701 (fax)
Email: jhenry2085@aol.com
**Attorney for Plaintiff**